[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14084
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00121-CR-A-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL LEE BOYKINS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 1, 2010)

Before BLACK, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Lee Boykins appeals his convictions and the resulting 97-months'

sentence for conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b). On appeal, Boykins raises several issues: (1) whether the government adduced sufficient evidence supporting his convictions, (2) whether the admission of a tape recorded statement with a confidential informant violated his right to confront the witnesses against him secured under the Sixth Amendment, (3) whether the district court erred by including a two-level increase in his Guidelines calculation for the possession of a firearm by a coconspirator, and (4) whether the district court erred by denying his request for a two-level reduction in his Guidelines calculation for a minor role. After review, we discern no error and accordingly affirm.

## I. Sufficiency of the Evidence

Boykins argues that the government did not prove that he knowingly, willingly, and voluntarily joined the conspiracy. He claims that the evidence showed that he was stranded at a Motel 6 without transportation where he allegedly counted drug money and made a trip to Louisiana with anther party, Jenkins, allegedly to deliver drug money, but that he removed himself from that situation once he had access to his vehicle. Boykins also claims that he neither recruited the

2

confidential informant to join the conspiracy over the phone nor did he sell any cocaine telephonically.

We review the sufficiency of the evidence *de novo*, viewing the evidence and all reasonable inferences and credibility choices in favor of the government and the jury's verdict. *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005) (per curiam). A conviction must be affirmed unless under no reasonable construction of the evidence could the jury have found defendant guilty beyond a reasonable doubt. *Id.* Credibility determinations are for the factfinder to make, and we typically will not review such determinations. *United States. v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994) (per curiam).

In order to secure a conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) the appellant knew of the essential objectives of the conspiracy; and (3) the appellant knowingly and voluntarily participated in the conspiracy. *United States v. Calderon*, 127 F.3d 1314, 1326 (11th Cir. 1997). "Whether the [defendant] knowingly volunteered to join the conspiracy may be proven by direct or circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme." *Garcia*, 405 F.3d at 1270 (internal quotation marks

omitted). The elements of possession with intent to distribute cocaine are: (1) knowing or intentional possession; (2) with intent to distribute or dispense; (3) cocaine. *See* 21 U.S.C. § 841(a)(1). Finally, to support a conviction for unlawful use of a communication facility under 21 U.S.C. § 843(b), the government must prove that the defendant knowingly and intentionally used a communications facility, such as a telephone, to facilitate the commission of a narcotics offense. *United States v. Rivera*, 775 F.2d 1559, 1562 (11th Cir. 1985).

The evidence, taken in the light most favorable to the government, supports Boykins' convictions. The record supports the conclusion that a large conspiracy existed and that the purpose of that conspiracy was to possess and distribute cocaine. The record also supports the conclusion that Boykins knowingly and voluntarily counted the proceeds from the sale of cocaine, that he knew the proceeds were from the sale of cocaine distributed by other members of the conspiracy, that he was present when the source of the cocaine collected some of the proceeds, and that he knowingly and voluntarily traveled to Louisiana with another member of the conspiracy to deliver further proceeds to the conspiracy's source of cocaine. Accordingly, the record contains sufficient evidence to support his conviction for conspiracy under 21 U.S.C. § 846. The evidence also supports the conclusion that Boykins knowingly and intentionally used a telephone to

4

facilitate the distribution of cocaine. The record shows that Boykins engaged in multiple phone calls with a confidential informant during which he discussed the price and availability of cocaine and offered to facilitate a connection between the confidential informant and another member of the conspiracy for access to cocaine. Accordingly, the record contains sufficient evidence to support his conviction for unlawful use of a communications facility in committing a felony under 21 U.S.C. § 843(b).

## II. Confrontation Clause

Boykins argues that because the audio recordings of his alleged conversations with the confidential informant were not authenticated at trial by the confidential informant or any person physically present with him during the time of the conversations, they were inadmissible testimonial hearsay. He argues further that because the recordings were inadmissible hearsay, admission of the recordings violated right his to confront his accuser secured to him under the Sixth Amendment's Confrontation Clause.

We review questions of constitutional law *de novo* and determinations of the admissibility of evidence for abuse of discretion. *United States v. Underwood*, 446 F.3d 1340, 1345 (11th Cir. 2006). When a defendant fails to object to an alleged

violation of the Confrontation Clause at trial, we review the alleged violation only for plain error. *United States v. Brazel*, 102 F.3d 1120, 1141 (11th Cir. 1997). Simply raising a hearsay objection at trial is insufficient to "preserve a constitutional challenge under the Confrontation Clause for appeal." *United States v. Arbolaez*, 450 F.3d 1283, 1291 n.8 (11th Cir. 2006) (per curiam). To establish plain error, the defendant must demonstrate that: (1) there was an error in the lower court's action; (2) such error was plain, clear, and obvious; and (3) the error affected substantial rights. *United States v. Foree*, 43 F.3d 1572, 1578 (11th Cir. 1995). Even if these three elements are present, we will not reverse unless the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.*

Notwithstanding several exceptions and exclusions, the Federal Rules of Evidence bar hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c), 802. Statements offered against a party which are the party's own statements, however, are not hearsay. Fed. R. Evid. 801(d)(2)(a). Additionally, a confidential informant's recorded statements offered, as in the instant case, to give context to a defendant's statements are not

hearsay because they are not offered for the truth of the matter asserted.[1] *See*

*United States v. Price*, 792 F.2d 994, 996-97 (11th Cir. 1986).

The Sixth Amendment's Confrontation Clause protects the accused's right

"to be confronted with the witnesses against him." U.S. Const. amend. VI. The

Confrontation Clause, however, does not affect the admission of all out-of-court

statements. Instead, the focus is on whether the statement is testimonial in nature.

*See Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed.

2d 177 (2004). Although the Supreme Court has not precisely defined the contours

of testimonial statements, we do know that the core inquiry includes whether the

hearsay statement "[was] made under circumstances which would lead an objective

witness reasonably to believe that the statement would be available for use at a

later trial." *Id.* at 52, 124 S. Ct. at 1364 (internal quotation marks omitted). We

have previously held that where the challenged evidence was a recorded statement

between a confidential informant and a co-conspirator regarding the purchase of

cocaine, the evidence was not testimonial. *Underwood*, 446 F.3d at 1347.

In this case, the district court did not err in admitting the recorded

conversations because they were neither hearsay nor barred by the Confrontation

---

[1] We note that the district court instructed the jury that the confidential informant's statements were not to be considered for the truth of the statements, but only to provide context to Boykins' statements.

7

Clause. Boykins' statements on the tape are not hearsay because they are his own admissions. *See* Fed. R. Evid. 802(d)(2)(A). The confidential informant's statements are not hearsay because they were not offered for the truth of the matter asserted. Even assuming *arguendo* that the informant's statements were testimonial, the Confrontation Clause does not bar the admission of those statements because, as the Supreme Court noted in *Crawford*, "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9. Finally, the Confrontation Clause does not bar the admission of Boykins' statements because they were neither hearsay nor testimonial. A party's own out of court admissions are not hearsay, and, as in *Underwood*, Boykins clearly did not make his statements under circumstances which would lead him to believe they would later be used at trial against him.

## III. Firearm Enhancement

Boykins argues that the district court should not have enhanced his sentence due to the presence of a firearm because he did not possess a firearm, and there was no testimony regarding a firearm or the possession of a firearm by a co-conspirator at his trial. Boykins points out that the only evidence of a firearm was the Drug

8

Enforcement Administration agent's testimony during sentencing regarding co-conspirators' proffers to the government.

"We review the district court's findings of fact [for a firearm enhancement] under U.S.S.G. § 2D1.1(b)(1) for clear error, and the application of the Sentencing Guidelines to those facts *de novo*." *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999). A firearm enhancement may be applied to a defendant if the government establishes by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (per curiam) (internal quotation marks omitted). Additionally, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," and "[o]nce the government shows that a firearm was present, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." *Id.* (internal quotation marks omitted).

In *Pham*, we recognized that (1) there is an "overpowering connection between the use of firearms and narcotics traffic," (2) "it [is] reasonably

foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs," and (3) firearm enhancements can be appropriate even if the defendant claims that he was unaware of the firearm. *See id.* at 1246. Furthermore, we specifically noted that in that case the district court did not err in applying the weapons enhancement where the vastness of the conspiracy and the large amount of drugs and money made it reasonably foreseeable to the defendant that a firearm would be possessed by a co-conspirator. *Id.*

Here, the district court found that various co-conspirators possessed firearms, that they did so in furtherance of the conspiracy, that Boykins was a member of the conspiracy at the time the co-conspirators possessed firearms, and that possession of a firearm by a co-conspirator was reasonably foreseeable given the type of drug conspiracy and amount of money at hand. The record supports those conclusions. At sentencing, the DEA agent testified to proffers made by various co-conspirators to the effect that they possessed firearms throughout and in furtherance of the conspiracy. Given the size and scope of the conspiracy, it was reasonable to conclude, as in *Pham*, that the possession of firearms by co-conspirators was reasonably foreseeable to Boykins. Moreover, Boykins has not proven that the connection between the firearms and cocaine conspiracy is clearly

10

improbable. Accordingly, the district court did not err in applying the firearm enhancement to Boykins' Guidelines calculation.

## IV. Minor Role

Boykins argues that he was entitled to a minor role reduction in his sentence because (1) he never had contact with any of the cocaine in the alleged conspiracy; (2) all he did was count money, take a trip, and speak on the phone to the confidential informant; and (3) his actions took place during a four or five day period.

We review a district court's determination of whether a defendant qualifies for a minor role adjustment under the Guidelines only for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant bears the burden at all times of establishing his minor role in the offense by a preponderance of the evidence. *Id.* at 939. The district court has "considerable discretion in making this fact-intensive determination." *Id.* at 946. It is not necessary for the court to make specific findings of fact, so long as its "decision is supported by the record and the court clearly resolves any disputed factual issues." *Id.* at 939 (emphasis omitted).

A defendant may receive an adjustment for his mitigating role in the offense

11

if he "plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment. (n.3(A)). A two-level, minor role reduction under § 3B1.2(b) applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

*De Varon* sets forth a two-part analysis of a defendant's conduct to determine whether the defendant warrants a minor role reduction. 175 F.3d at 940-45. First, the court "must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing." *Id.* at 945. "[W]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable." *Id.* at 941. The first prong of *De Varon* is often dispositive of the issue. *See id.* at 945. Second, the district court may compare "the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct." *Id.* at 945. To apply the adjustment under this prong, the district court must find that "the defendant was less culpable than most other participants in [his] relevant conduct." *Id.* at 944 (emphasis omitted). Even if a defendant's role is "less than that of other participants engaged

in the relevant conduct," he might not be entitled to an adjustment because, in some cases, there are no minor or minimal participants. *Id.*

The district court did not clearly err in determining that Boykins was not entitled to a minor role reduction. Boykins was held responsible for a conspiracy to distribute less than five kilograms of cocaine. Thus, the conduct he was held accountable for was identical to his actual conduct. In relation to the second *De Varon* inquiry, Boykins attempts to minimize the scope of his own actions; however, he never suggests another participant against which to measure his culpability in the relevant conduct. Even if Boykins had advanced an argument along this line, we conclude that because Boykins participated in the counting and conveyance of the substantial proceeds from the sale of the cocaine in question to the cocaine source, the district court did not clearly err in concluding that Boykins was a substantial participant. Accordingly, the district court did not err in denying Boykins a two-level deduction for a minor role.

AFFIRMED.[2]

---

[2] Appellant's request for oral argument is DENIED.

13